UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

H.P., by and through his Parents and
Legal Guardians, N.P. and S.P.,

    Plaintiffs,

v.

Oak Park and River Forest School Dist. #200,
.

    Defendants.

Case No.

Honorable _____

---

**COMPLAINT**

**I.    INTRODUCTION**

1.    Plaintiff H.P. (the Student), by and through his Parents and legal Guardians, N.P. and S.P. (the Parents), brings this civil action against Defendant, Oak Park and River Forest District 200 (the District) in order to protect his statutory right to a "stay-put" placement at the residential program where he currently resides and receives services pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(j).

2.    This action arises out of the erroneous decision by the Hearing Officer assigned to the pending special education Due Process hearing denying the Plaintiffs' Motion to Enforce Statutory Stay-Put Placement. As described in detail below, the Hearing Officer committed clear error in finding that H.P.'s current residential placement cannot be his stay-put placement during the pendency of the Due Process hearing.

## II. JURISDICTION AND VENUE

3. Jurisdiction is conferred upon this Court by 20 U.S.C. §§ 1415(i)(2)(A) and 1415(i)(3)(A), which provide the District Courts of the United States with jurisdiction over any action brought under the IDEA without regard to the amount in controversy. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, based upon the federal question raised herein, and 28 U.S.C. § 1343, because this action is brought to vindicate Plaintiffs' civil rights under the IDEA. There is a present and actual controversy between the parties to this action.

4. To the extent required by law, Plaintiffs have exhausted administrative remedies related to the issue raised herein as the Hearing Officer's decision and order on stay-put is final. Given the time sensitive nature of the IDEA's stay-put provision, an immediate appeal is necessary to give realistic protection to the claimed right. Section 1415(j) establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) (*citing Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F. 3d 1466, 1472 (6th Cir. 1996)). In short, "[i]f [a child] is not maintained in [their] current educational placement during the pendency of the proceedings, the right under the stay-put provision will have been totally lost." *Cara B. v. Mundelein High School Dist.* 120, 20 IDELR 263 (ND Ill. 1993).[1] (Exhibit M, pp. 1, 2-3.)

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as Plaintiffs reside within the Northern District of Illinois and all events and omissions giving rise to this Complaint occurred in the Northern District of Illinois.

---

[1] All unreported cases are collected in Exhibit M – Unreported Decisions.

## II. PARTIES

6. Plaintiff H.P. was born on August 22, 2001. His permanent residence is with his parents, N.P. and S.P., within the jurisdictional boundaries of Oak Park and River Forest High School District 200. H.P. is a person with significant disabilities. At all times relevant to this Complaint, H.P. has been eligible to receive special education and related services as a student with a disability under the IDEA. 34 C.F.R. § 300.8 and Illinois Public Act 102-0172.

7. Plaintiffs N.P. and S.P. are the parents and legal guardians of H.P. They reside within the jurisdictional boundaries of Oak Park and River Forest High School District 200.

8. Defendant Oak Park and River Forest High School District 200 is a local education agency (LEA) subject to the provisions of the IDEA and is thus responsible for providing H.P. with a free appropriate public education (FAPE) and the procedural protections required therein. 20 U.S.C. §§ 1400-1419.

## III. FACTS

9. H.P. is a 22-year-old young man who has multiple severe disabilities which include autism and moderate intellectual disability. Among other things, H.P.'s disabilities result in limited language abilities and impaired adaptive functioning (estimated at lower than 99% of his peers). As a result, H.P. requires intensive and ongoing instruction even with respect to basic skills and a significant level of support in his daily activities. (*See* Exhibit A – Parent's Affidavit Related to All Facts in Complaint, ¶¶ 4-8.)

10. During an individualized education program (IEP) meeting on September 26, 2018, H.P.'s IEP team, including the Parents and the District, changed H.P.'s educational placement to a therapeutic residential school. (*See* Exhibit B – September 26, 2018 IEP) (Exhibit A, ¶ 9).

11. Shortly thereafter, H.P. moved to The Camphill School (Camphill), a therapeutic residential school located in Pennsylvania. He remained at Camphill from that time and through July 25, 2023 (Exhibit A, ¶ 9) and the District remained financially responsible for the placement for its duration. The District and the Parents continued to agree that a residential level of support was necessary for H.P. throughout his stay there. As articulated in the March 2023 IEP, H.P. "needs intense and frequent instruction to generalize, transfer and apply skills across multiple settings, he needs functional and academic support to increase his social[,] functional, academic and behavioral skills which cannot be provided within the general education curriculum." (*See* Exhibit C – March 9, 2023 IEP.)

12. On July 28, 2021, Governor Pritzker signed into law Illinois Public Act 102-0172 (Illinois House Bill 40) which amended the Illinois School Code (105 ILCS 5/14-1.02). Pursuant to this Illinois House Bill 40, a disabled Illinois student whose 22nd birthday occurs during the school year remains eligible for special education services through the end of that school year.

13. H.P.'s 22nd birthday was August 22, 2023, which was after the start of the District's 2023-24 school year. Consequently, H.P. is entitled to continuing special education and transition services through the end of the current (2023-2024) academic year. (Exhibit A, ¶ 11.) The District does not contest this continuing entitlement to services.

14. The District knew or should have known that Illinois House Bill 40 was enacted and that it conferred upon H.P. the right to an additional year of IDEA eligibility for the 2023-2024 school year. (Exhibit A, ¶ 13.)

15. Per its internal policies, Camphill serves students only until they turn 22. Accordingly, Camphill planned to terminate H.P.'s services in July 2023 and discharge him from its program at that time. (Exhibit A, ¶ 12.)

16. The District was aware that H.P. could not remain at Camphill beyond July 2023 due to the program's age restriction. Notes from H.P.'s March 9, 2023 IEP meeting record his anticipated duration of services at Camphill through July 21, 2023, reference 2023 as his graduation year, and even remark that there will be a "good bye ceremony" for H.P. on July 21, 2023, his last day of services at Camphill. (*See* Exhibit C.) (Exhibit A, ¶ 14.)

17. Although it knew H.P.'s placement was ending and H.P. would remain eligible for another year of services, the District did not offer an alternative residential therapeutic placement for H.P. and took no affirmative steps to identify possible replacement programs until ordered to do so by a Due Process Hearing Officer on August 9, 2023 (as described further below). (Exhibit A, ¶ 14.)

18. Instead, the District passively forced the Parents to conduct their own search. Accordingly, in 2022, given the lack of support from the District, the Parents began to search in earnest for another residential school for H.P. (Exhibit A, ¶ 15.)

19. The District complicated the Parents' search for a suitable residential school for H.P. by misinforming them that in order for H.P. to access the additional year of services available under Illinois House Bill 40, they would need to locate a program that started prior to his 22nd birthday. This information turned out to be erroneous; and the District later conceded (in June 2023) that its own academic calendar is the relevant calendar for purposes of eligibility under Illinois House Bill 40. (Exhibit A, ¶ 13.)

20. In the course of their search, the Parents identified Vista Life Innovations (Vista Life) in Connecticut, a non-Illinois State Board of Education (ISBE) approved residential placement that provides transition educational services that meet H.P.'s unique needs in a

5

community-based program. Critically, this facility does not have an age limit of 21 years old and therefore could serve H.P. through his last year of eligibility for IDEA services. (Exhibit A, ¶ 15.)

21. In the fall of 2022, the District informed the Parents that before the District could consider a non-ISBE approved residential placement, the Parents would need to explore ISBE-approved facilities to discern whether any such facilities could meet H.P.'s needs. Accordingly, the Parents hired an educational placement consultant to assist them in their search. After an exhaustive search of over 25 programs, the Parents and their professional placement consultant were unable to locate a residential school that could meet H.P.'s needs, had available space, would provide services past age 21, and was ISBE-approved. Thus throughout their extensive search, Vista Life was the only residential program identified that would be available for H.P. when he needed placement in July 2023. (Exhibit A, ¶¶ 17, 18.)

22. On May 5, 2023, the Parents made a request to the District for an Emergency and Student-Specific Residential Placement pursuant to 23 Ill. Admin. Code 226.330(g) which provides for placement in nonpublic special education facilities that are not ISBE-approved when specific criteria have been met. (*See* Exhibit D – Parents' Request for an Emergency and Student Specific Placement.) The Parents did not ask for a change in H.P.'s level of placement, but simply that his residential placement be implemented at Vista Life instead of Camphill as of July 2023 when Camphill would become unavailable to H.P. due to his age. Over the following month, the District did not respond directly to the Parents' request and did not offer an alternative placement. (Exhibit A, ¶¶ 19, 20.)

23. When the Parents met with the District on June 5, 2023, the District denied their request to modify H.P.'s serving school to be Vista Life and instead expressed the intent to fundamentally change H.P.'s placement from residential to a day school placement. To wit, the

District offered its own day transition program, Community Integrated Transition Education (CITE). (*See* Exhibit E - June 5, 2023 IEP.) The Parents clearly and unambiguously disputed this proposed change of placement at the meeting. (Exhibit A, ¶ 21.) The District subsequently documented this the change of placement in an IEP meeting on August 25, 2023. (*See* Exhibit L – August 25, 2023 IEP.)

24. At the conclusion of the June 5 meeting, the Parents urged the District to identify any residential placement that could meet H.P.'s needs, due to his ongoing need for residential placement, but the District refused. (Exhibit A, ¶ 21.)

25. On June 15, 2023, the Parents filed a Request for Due Process Hearing to challenge the District's proposed change of placement from a residential program to a day school. (Exhibit A, ¶ 22.) As the Parents filed their hearing request within the statutory 10-day period, the stay-put provision of the IDEA was automatically invoked, and the District was required to continue H.P.'s placement in a residential program during the pendency of the Due Process hearing. 20 U.S.C. § 1415(j).

26. While Camphill would otherwise serve as H.P.'s stay-put placement due to his participation in the program on the date the Parents' Hearing Request was filed, H.P. could not remain at Camphill beyond July due to the program's age restriction. (Exhibit A, ¶¶ 11, 12.)

27. Accordingly, on June 15, 2023, the Parents also sent to the District a Notice of Unilateral Placement indicating their intent to enroll H.P. at Vista Life and requesting the District assume responsibility for tuition, room and board, and all other costs associated with H.P.'s placement at Vista Life. (*See* Exhibit F – Notice of Unilateral Placement.) (Exhibit A, ¶ 22.)

28. Five and a half weeks lapsed between the Parents' Notice of Unilateral Placement and H.P.'s actual relocation to Vista Life. During this time, the District failed to provide any

response to the Parents' request. They did not indicate that they were rejecting the Parents' unilateral placement and significantly, they did not suggest any alternative residential programs that could serve as H.P.'s stay-put placement. (Exhibit A, ¶¶ 23, 25.)

29. Instead, during this time, the District focused its efforts exclusively on moving to dismiss the Parents' Due Process action on the ground that because H.P.'s entitlement to services after age 22 rested on Illinois House Bill 40, he could not avail himself of the protections of the administrative Due Process hearing procedures. The Hearing Officer correctly concluded that H.P. and the Parents were fully entitled to access the Due Process system to resolve their dispute and denied the District's motion.

30. Meanwhile, as the end of July 2023 approached, H.P.'s termination from Camphill was imminent and still the Parents had not been offered a stay-put placement by the District. Needing to ensure that H.P. would continue to receive the same level of support as required by his IEP, the Parents relocated H.P. from Camphill to Vista Life on July 25, 2023. (Exhibit A, ¶¶ 24, 25.)

31. As of the date of this filing, the Parents have paid Vista Life over $24,564.52 in tuition and security deposit fees to secure H.P.'s placement and obtain the services and supports that he requires. (*See* Exhibit G – Proof of Payments to Vista Life.) (Exhibit A, ¶ 27.)

32. On July 28, 2023, the Parents filed a Motion to Enforce Statutory Stay-Put Placement with the Hearing Officer assigned to their Due Process matter. (*See* Exhibit H – Petitioners' Motion to Enforce Statutory Stay-Put Placement.) The Parents requested that the Hearing Officer order the District to maintain H.P.'s placement at Vista Life during the pendency of the proceedings in the case and to reimburse the Parents for the full amount that they had paid to secure H.P.'s placement at Vista Life. The motion was fully briefed by the parties. On August

8

9, 2023, the Hearing Officer erroneously denied the Parents' Motion. (*See* Exhibit I – Ruling on Motion to Enforce Stay-Put.) In his ruling, the Hearing Officer ordered the District to locate an ISBE-approved therapeutic residential facility that does not substantially and materially alter the Student's prior educational program provided at Camphill and that meets the requirements for a stay-put placement. The Hearing Officer indicated that the District was "free to consider" Vista Life as a stay-put placement, but left H.P.'s stay-put placement (and therefore his continued residency) at Vista Life entirely to the District's discretion. Finally, the Hearing Officer ordered that if the District could not locate a therapeutic residential program that could provide H.P. with a stay-put placement, the Hearing Officer would hold a limited hearing on the efficacy of the Parents' unilateral placement as compared to the appropriateness of CITE, the District's day school transition program. (*Id.*) (Exhibit A, ¶ 28.)

33. The Parents filed a Motion to Reconsider on August 14, 2023. (*See* Exhibit J – Petitioner's Motion to Reconsider.) The motion was fully briefed by the parties. The Hearing Officer erroneously denied the Parents' Motion to Reconsider on August 19, 2023. (*See* Exhibit K – Ruling on Motion to Reconsider.) (Exhibit A, ¶ 28.)

34. As a result of the District's inaction in failing to plan for H.P.'s continuing need for a residential placement, the Parents were forced to locate and fund H.P.'s placement, both in terms of his long-term placement for the 2023-2024 school year and his stay-put placement for the pendency of the Due Process matter. These are responsibilities that should have been assumed by the District. The Hearing Officer's ruling places the Parents in a precarious position of being forced to continue H.P.'s placement at their own expense or move H.P. to a yet-undetermined residential placement or, worse yet, to a significantly less supportive day school placement (CITE). (Exhibit A, ¶ 28.)

35. The Hearing Officer's ruling virtually ensures that H.P. will have one to two more relocations ahead of him over the remainder of this school year. H.P. already had to relocate from one residential school to another because the District failed to offer a residential placement for him once it learned that he was entitled to another year of services that could not be provided at Camphill. The District also neglected to provide H.P. with a stay-put placement when Parents filed a Due Process complaint. It would be a significant hardship for H.P to have to move *again* to a new residential stay-put setting during the pendency of the Due Process hearing and *yet again* at the conclusion of the Due Process hearing. Due to his disabilities, transitions of any kind are difficult for H.P. Such a rapid succession of placement changes contradicts the status quo purpose of the stay-put mechanism and would ensure substantial disruption and degradation to the quality of H.P.'s remaining nine months of special education services. (Exhibit A, ¶ 29.)

### III. ARGUMENT

**A. The Hearing Officer Committed Clear Error in Ruling that Vista Life Cannot be H.P.'s Stay-Put Placement.**

    **i. H.P. is Entitled to Stay-Put Placement at Vista Life During the Pendency of the Parties' Due Process Hearing.**

36. Stay-put requires that during the pendency of any administrative or judicial proceeding regarding the provision of FAPE to a child with a disability, "the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). This stay-put provision operates as an **automatic statutory injunction**. *Casey K. v. St. Anne Comm. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (citing *Honig v. Doe*, 484 U.S. 305, 326-27 (1988)) (Emphasis added). As such, it is not necessary for the Parents to satisfy the usual prerequisites for a preliminary injunction for a statutory injunction to issue in this case. *Board of Educ. of Community High Sch. Dist. No. 218 v. Illinois State Bd of Educ.*, 103 F.3d 545, 550 (7th Cir. 1996).

37. An analysis of stay-put simply requires a determination of the student's last mutually agreed upon educational placement. *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78 (3d Cir. 1996). Plaintiffs filed their Due Process Hearing Request promptly (within 10 business days) following the District's proposed change of H.P's placement. Therefore, the stay-put provision of the IDEA requires that H.P.'s placement at therapeutic residential school be maintained during the pendency of the Due Process matter. The District does not dispute that a residential placement is H.P.'s last mutually agreed upon placement for the purpose of stay-put.

38. If Camphill were available for H.P. it would be his stay-put placement. However, H.P. could not remain at Camphill beyond his 22nd birthday due the program's own internal age-restrictions. As such, a move to another comparable educational facility was necessitated. In situations such as this, the IDEA stay-put requirement is satisfied through placement in a program that is materially and substantially similar to the former program that is no longer available. *Letter to Fisher*, 21 IDELR 992 (OSEP 1994). (Exhibit M, pp. 5, 8.) The key question to determining if a new or different placement satisfies stay-put is whether such placement would genuinely alter the student's educational program by eliminating or fundamentally changing one of its basic elements. *D.K. v. District of Columbia*, 962 F.Supp. 2d 227 (D.D.C. 2013).

39. This is based on the long-established understanding that stay-put was "designed to preserve the status quo pending resolution of administrative and judicial proceedings under the Act." *Doe v. Brookline Sch. Comm.,* 722 F.2d 910, 915 (1st Cir. 1983) (citing *Doe v. Anrig*, 692 F.2d 800, 810 (1st Cir. 1982). See also *Community High Sch. Dist. No. 218*, 103 F.3d at 548; *Ms. S. ex rel. G. v. Vashon Island Sch. Dist.,* 337 F.3d 1115, 1133 (9th Cir. 2003).

40. Vista Life, as a residential program, offers a comparable level of educational placement to Camphill, with the intensity and consistency of supports that are inherent in a twenty-

four hour-per-day/seven days-per-week facility. As Vista Life is materially and substantively similar to Camphill, placement at Vista Life will fulfill the purpose of the stay-put provision, providing continuity and stability to H.P. during the pendency of the administrative hearing.

41. Moreover, Vista Life was the only residential placement available to H.P. at the time a move from Camphill had to be made. The Parents conducted an exhaustive search of ISBE-approved residential placements, with the assistance of a professional placement search organization, and found none that had availability, were appropriate to meet H.P.'s needs, and would serve him beyond his 22nd birthday. When the Parents asked the District to identify alternative residential placements that were available and appropriate for H.P., the District refused. Thus, this case is similar to *Community High School 218*, 103 F.3d at 549 (affirming District Court injunction effecting stay-put provision where school district failed to offer alternative stay-put options).

42. The Hearing Officer also clearly erred by basing his decision on the fact that ordering the District to pay for Vista Life as H.P.'s stay-put placement would require the District to pay for a placement that may later be found inappropriate in the underlying hearing. This reasoning undermines the meaning and purpose of stay-put and could have a drastic negative impact on the availability of stay-put in *all* private placement cases, regardless of whether they involve unilateral placement.

43. The fault in the Hearing Officer's reasoning is that the consequence of enforcing stay-put that gives him pause (i.e., the possibility that the District may be forced to fund a placement not ultimately sanctioned by the court after a full Due Process hearing) is the natural and foreseeable consequence of the long-established stay-put mechanism. That is how stay-put operates: it places the responsibility for maintaining the child's placement squarely on the school

district during the pendency of the administrative or judicial proceedings. *Community High Sch. Dist. No. 218*, 103 F.3d at 550 (the school district could not "bootstrap this underlying dispute over funding into this highly time-sensitive determination of where the child is to reside while the trial is prepared. Until the cost shifting is decided at trial or through settlement the school district is financially responsible for [the child's] education.")

44. The allocation of risk to the school district is justified by the critical policy that underlies the stay-put provision, i.e., providing stability and consistency in the education of a student with a disability. *Honig v. Doe*, 484 U.S. at 323. Thus stay-put is not dependent on the merits, or lack thereof, of issues in the Due Process proceeding. *City of Chicago Public School District* 299, 52 IDELR 28 (N.D. Ill. 1993). (Exhibit M, pp. 10, 13.) It is the pendency of the pleadings alone that triggers stay-put and not concerns with whether the District should be made to fund in the short term a placement that may not be found appropriate in the long term. See *Cara B. v. Mundelein High School Dist. 120*, 20 IDELR 263, 264-65 (N.D. Ill. 1995) (that application of the stay-put provision might make any ultimate victory by the school district pyrrhic should not be taken into account.) (Exhibit M, pp. 1, 3.)

45. The District must preserve the status quo pending resolution of the due process case by maintaining H.P.'s stay-put placement at Vista Life, a residential school that offers a program materially and substantially similar to Camphill, his last agreed upon placement.

    **ii. Because Camphill was Not Available as a Stay-Put Placement for H.P. and the District had not Identified Another Stay-Put Placement, the Parents' Unilateral Placement of H.P. at Vista Life Does Not Alter the District's Responsibility to Maintain Stay-Put in that Program.**

46. In denying the Parents' Motion to Enforce Stay-Put at Vista Life, the Hearing Officer erroneously asserted that the Parents were not entitled to the stay-put remedy because H.P. had arrived at Vista Life through the Parents' unilateral placement and not through the District's

IEP placement process. According to the Hearing Officer, when the Parents unilaterally enrolled H.P. at Vista Life they accepted the risk that they would not be reimbursed and would be responsible for the costs of the placement. While this is generally true regarding unilateral placements, the Hearing Officer ignored critical facts and case law that render this precept irrelevant to the present case.

47. The Parents' unilaterally placed H.P. at Vista Life because his prior placement at Camphill was unavailable and the District did not offer an alternate stay-put placement. In cases with these circumstances, school districts have been required to fund parents' unilateral placements as stay-put placements. *See e.g. Agawam Public Schools v. Mass. State Educational Agency,* 111 LRP 66091 (Oct. 6, 2011) (School district required to fund student's stay-put placement where the parents had unilaterally placed her after failing to find a comparable alternative) (Exhibit M, p. 14); *Knight v. District of Columbia*, 877 F.2d 1025 (D.C. Cir. 1989) (If a student's "then current educational placement" becomes unavailable, the school district must provide a similar placement pending administrative and judicial approval); *Ventura de Paulino v. New York City Dep't of Educ.,* 959 F.3d 519 (2d Cir. 2020) (holding that a parent could not unilaterally place a child in another school and expect the new school to serve as the child's stay-put when the original placement was still available, but distinguishing that the same may not apply in a situation where the original placement was no longer available.)

48. Further, whether Vista Life is an appropriate option for H.P. is secondary to the District's obligation to offer a residential placement as stay-put, which they failed to do. The Parents were thus forced to engage in self-help to secure an appropriate residential placement for H.P. and to fill the void created by the District's failure to fulfill its stay-put obligation to H.P.

14

49. In essence, when the District failed to provide a stay-put placement for H.P., the Parents "step[ped] into its shoes to ensure that the student continue[d] to receive what had previously been determined to constitute a free, appropriate public education. In that event public funding follows the student in the form of automatic reimbursement of parent expenses." *Agawam Public Schools*, 111 LRP 66091. (Exhibit M, pp. 14, 17.) See also *Florence County School District v. Carter*, 114 S.Ct. 361 (1993) (endorsing parents' right to unilateral placement as a means of self-help, including in a non-approved school, where district has failed to provide a free appropriate public education).

50. The Hearing Officer's ruling improperly grants the District a second chance to find a stay-put placement after the District shirked its responsibility to do so at the time when its assistance could truly have been helpful to H.P. The District had the opportunity, and indeed the obligation, to provide a stay-put placement during the five and a half weeks between the point that the Parents requested an administrative hearing and the time when they relocated H.P. to Vista Life. If the District had a stay-put placement to offer for H.P. *that* was the appropriate time to make it available.

51. By giving the District another opportunity to search for a placement now, the Hearing Officer is providing an inappropriate benefit to the District at the expense of H.P. If the District can find a placement that will accept H.P. now, the Hearing Officer suggests that this could serve as H.P.'s stay-put placement. But such a result would directly contravene the purpose of stay-put – to maintain the status quo. H.P. was already forced to move once during the pendency of this matter because he aged out of Camphill. Without any support or input from the District, the Parents searched for and found an appropriate residential placement that was available to meet

15

H.P.'s needs. He is just now demonstrating that he has made the adjustment to Vista Life after approximately a month in the program. (*See* Exhibit A, ¶ 29.)

52. "In complying with the stay-put provision, we must interpret 'educational placement' to incorporate enough flexibility to 'encompass [the child's] experience.'" *John M. v. Bd. of Educ. of Evanston Twp. High Sch.*, 502 F.3d 708, 715 (7th Cir. 2007) (citing *Bd. of Educ. of Community High Sch. Dist. No. 218 v. Ill. St. Bd. of Educ.*, 103 F.3d 545, 549). Given H.P.'s aversion to transitions, and the time it takes him to adjust to a new placement, forcing him to move to a new program to serve as his stay-put placement would be a significant negative change to his educational experience and thus be antithetical to the purpose of stay-put. (*See* Exhibit A.)

53. The Hearing Officer also erred by ordering that if the District cannot find any other appropriate stay-put placement during the improper second chance it has been given to do so, the next step would not be to order stay-put placement at Vista Life, where H.P. has resided and received services for approximately one month, but instead to hold an evidentiary hearing on the efficacy of the Parents' unilateral placement versus the appropriateness of the District's CITE program. As the Hearing Officer notes in his Order, it was the District that suggested convening this hearing. Here again, the Hearing Officer is following the District's lead and granting the District significant leeway at the expense of H.P., the student who stay-put is intended to protect.

54. Moreover, by simply giving the District freedom "to consider" Vista Life as a stay put placement, the Hearing Officer essentially gifted the District post-hoc veto power over the Parents' unilateral placement which they made only after the District abrogated its responsibility to identify a viable stay-put placement in the first place. Further, if the Hearing Officer perceives that Vista Life is a placement the District could "consider," it suggests that the Hearing Officer

16

had no legitimate reason to determine that Vista Life should not be H.P.'s stay-put placement to begin with.

## IV.    REQUESTED RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

A.    Issue a statutory stay-put injunction, ordering Defendant to maintain H.P.'s stay-put placement at Vista Life pending a final disposition of the administrative Due Process Hearing;

B.    Order Defendant to reimburse Plaintiffs' out-of-pocket costs incurred in relation to H.P.'s stay-put placement at Vista Life to date;

C.    Order Defendant to pay Plaintiffs' reasonable attorneys' fees and costs incurred in bringing this action; and

D.    Order any other and further relief, both legal and equitable, that this Court may deem just and proper.

Respectfully submitted on this 5th day of September 2023,

N.P. and S.P. on behalf of their son, H.P.,

By their attorneys,

*/s/ Matthew D. Cohen*
Matthew D. Cohen

*/s/ Bradley J. Dembs*
Bradley J. Dembs

*s/ Jill T. Calian*
Jill T. Calian

Matt Cohen & Associates, LLC
155 N. Michigan Ave., Suite 715
Chicago, IL 60601
(866) 787-9270
matt@mattcohenandassociates.com
brad@mattcohenandassociates.com
jill@mattcohenandassociates.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter. I also served the foregoing via email upon:

**Oak Park and River Forest School District 200**

> Jennifer A. Smith, Counsel for District
> jas@franczek.com

*/s/ Bradley J. Dembs*
Bradley J. Dembs
Matt Cohen & Associates, LLC
155 N. Michigan Ave., Suite 715
Chicago, IL 60601
(866) 787-9270
brad@mattcohenandassociates.com
